## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>MSI CORPORATION,<br><br>               Debtor. | Chapter 11<br><br>Case No. 13-22457-JAD<br><br>Docket No.\_\_\_\_\_ |

## MOTION TO (A) APPROVE SALE PROCESS FOR NON-ESSENTIAL EQUIPMENT OUTSIDE THE ORDINARY COURSE OF BUSINESS AND (B) AUTHORIZE RETENTION OF EQUIPMENT BROKERS

MSI Corporation (the "Debtor" or "MSI"), hereby moves (the "Motion") for entry of an order approving a sale process for the marketing and sale of non-essential assets ("Miscellaneous Assets") outside the ordinary course of business and authorizing the Debtor to retain certain brokers to market the Miscellaneous Assets.

### I.     Jurisdiction and Venue

1. On June 7, 2013 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").

2. Debtor remains in possession of its assets and is managing its business as a debtor-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief sought herein are Bankruptcy Code sections 105(a), 327(a), 328(a) 363(b), and 363(f).

1

## II. Additional Background

6. On July 25, 2013, the Debtor and First Commonwealth Bank (the "Lender") filed a Joint Motion to Approve Stipulation Authorizing Usage of Cash Collateral and Request for Expedited Hearing Thereon (Docket No. 76, the "Cash Collateral Motion").

7. Pursuant to the Cash Collateral Motion, the Debtor and Lender sought approval of a stipulation ("Stipulation") between those parties authorizing the Debtor to continue to use cash collateral in accordance with the Stipulation.

8. The Stipulation provided, *inter alia*, that the Debtor would attempt to sell some Miscellaneous Assets and retain professionals to assist in that endeavor. See Stipulation, ¶ 26.

9. This Motion is filed in furtherance of the Stipulation.

## III. Relief Requested

10. By this Motion, the Debtor seeks to establish procedures (i) to sell certain Miscellaneous Assets outside the ordinary course of the Debtor's business, pursuant to section 363 of the Bankruptcy Code, free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens"), with such Liens attaching to the proceeds with the same validity, extent and priority as had attached to the assets immediately prior to the sale or transfer, and (ii) approve the retention of brokers to market the Miscellaneous Assets.

## IV. Basis for Relief Requested

### A. The Sale of Miscellaneous Assets

11. During the ordinary course of its business operations, the Debtor has accumulated certain Miscellaneous Assets that are no longer necessary to the Debtor's core business. In the exercise of its sound business judgment, the Debtor has determined, and may determine in the future, that the prompt sale of Miscellaneous Assets will be in the best interest of its estate and creditors.

12. Some of the Miscellaneous Assets have values that are relatively modest. Other Miscellaneous Assets have more significant value.[1] The Debtor proposes to establish a procedure for the sale of both types of assets, which will conserve the resources of both this Court and the Debtor by avoiding the need for separate motions to approve relatively small sales.

B. **The Proposed Sale Procedures**

13. In connection with the sale of the Miscellaneous Assets, the Debtor seeks authorization to sell such assets pursuant to the following procedures (the "Sale Procedures") unless such sale is to an "insider," as that term is defined in section 101(31) of the Bankruptcy Code:[2]

    (a) ***With regard to sales or transfers of Miscellaneous Assets to a purchaser with a selling price equal to or less than $20,000, on a per-transaction basis:***

        (1) The Debtor may sell the Miscellaneous Assets without further order of the Court subject to the procedures set forth herein if the Debtor determines in the reasonable exercise of its business judgment that such sales or transfers are in the best interests of the estate.

        (2) Any such transaction(s) shall be free and clear of all Liens, with such Liens attaching only to the sale or transfer proceeds with the same validity, extent and priority as had attached to the Miscellaneous Assets immediately prior to such sale or transfer.

        (3) Any Miscellaneous Asset offered for sale will be placed on the Court's Electronic Access to Sales Information (EASI) system.

        (4) The Debtor shall give written notice of each such sale or transfer (a "Sale Notice") to (A) the Office of the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee"), (B) counsel for the Lender, (C) any creditor asserting a lien in the Miscellaneous Asset and (D) all other creditors and parties in interest identified on the creditors matrix. **The Sale Notice shall be filed and served at least ten (10) days**

---

[1] The Debtor intends to sell a USI/Clearing Hydraulic Press, an Amada H130011 Dual Column Band Saw and an Amada VM 3800 Plate Saw in addition to other Miscellaneous Assets. These three pieces of equipment have values that exceed the ranges established for the modified sale procedures and therefore are not subject to those procedures.
[2] The proposed Sale Procedures are <u>not</u> available to an insider or applicable to a sale of Miscellaneous Assets to an insider.

3

**prior to the proposed closing** on any such sale. No further notice other than the Sale Notice shall be required.

(5) The content of the Sale Notice shall consist of (A) identification of the Miscellaneous Assets being sold or transferred, (B) identification of the purchaser of the assets, (C) the purchase price, (C) the proposed closing date, (E) the proposed broker's fee/commission and (F) the significant terms of the sale agreement or other transfer agreement.

(6) **If no written objections are received by counsel for the Debtor within two days of the of the proposed closing date,$^3$ the Debtor is authorized to immediately consummate such sale** or transfer and pay (A) any broker's fees/commission and (B) the Lender in accordance with the Stipulation, after entry of an order approving such sale. Debtor's Counsel is required to file a proposed order with the Court under certification of counsel that no objection has been asserted.

(7) If a written objection is timely received by counsel for the Debtor, then the relevant Miscellaneous Asset shall only be sold or transferred upon either (A) the consensual resolution of the objection by the parties in question or (B) further order of the Court after notice and a hearing, which hearing shall be set upon the Debtor's filing of a notice of an objection to a proposed sale.

(b) ***With regard to sales or transfers of Miscellaneous Assets to a purchaser with a selling price greater than $20,000 but equal to or less than $75,000,$^4$ on a per-transaction basis:***

(1) The Debtor may sell the Miscellaneous Assets without further order of the Court subject to the procedures set forth herein if the Debtor determines in the reasonable exercise of its business judgment that such sales or transfers are in the best interests of the estate.

(2) Any such transaction(s) shall be free and clear of all Liens, with such Liens attaching only to the sale or transfer proceeds with the same validity, extent and priority as had attached to the Miscellaneous Assets immediately prior to such sale or transfer.

(3) Any Miscellaneous Asset offered for sale will be placed on the Court's Electronic Access to Sales Information (EASI) system.

(4) The Debtor shall give written notice of each such sale or transfer (a "Sale Notice") to (A) the Office of the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee"), (B) counsel for the

---

$^3$ Which may include a credit bid by the Lender.
$^4$ Sales of assets above $75,000 shall not be subject to the proposed Sale Procedures.

4

    Lender, (C) any creditor asserting a lien in the Miscellaneous Asset and (D) all other creditors and parties in interest identified on the creditors matrix. **The Sale Notice shall be filed and served at least fourteen (14) days prior to the proposed closing** on any such sale. No further notice other than the Sale Notice shall be required.

    (5) The content of the Sale Notice shall consist of (A) identification of the Miscellaneous Assets being sold or transferred, (B) identification of the purchaser of the assets, (C) the purchase price, (C) the proposed closing date, (E) the proposed broker's fee/commission and (F) the significant terms of the sale agreement or other transfer agreement.

    (6) **If no written objections are received by counsel for the Debtor within two days of the of the proposed closing date,[5] the Debtor is authorized to immediately consummate such sale** or transfer and pay (A) any broker's fees/commission and (B) the Lender in accordance with the Stipulation, after entry of an order approving such sale. Debtor's Counsel is required to file a proposed order with the Court under certification of counsel that no objection has been asserted.

    (7) If a written objection is timely received by counsel for the Debtor, then the relevant Miscellaneous Asset shall only be sold or transferred upon either (A) the consensual resolution of the objection by the parties in question or (B) further order of the Court after notice and a hearing, which hearing shall be set upon the Debtor's filing of a notice of an objection to a proposed sale.

  (c) Debtor requests that it be relieved of any additional noticing requirements, including, without limitation, any advertising requirements.

## C.  Basis for Establishing Procedures for Sale

14. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property fo the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. See, e.g., Meyers v. Martin

---

[5] The objection to any sale proposed pursuant to the Sale Procedures may include a credit bid by the Lender or any other lienholder.

5

(In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999).

15. In testing whether a "sound business judgment" exists, courts generally require a Debtor to establish four elements in order in justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

16. Section 105(a) of the Bankruptcy Code also provides a bankruptcy court with broad powers in the administration of a bankruptcy case. Section 105(a) provides that "(t)he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

17. There is more than ample business justification for the approval of the Sale

6

Procedures and the sale of the Miscellaneous Assets in accordance with those procedures. First, the Miscellaneous Assets are non-essential assets. The proceeds from the sale of those assets will better serve the creditors than allowing the assets to sit idle in the Debtor's facilities. Second, the proposed Sale Procedures will reduce the costs normally associated with selling assets in a bankruptcy, which in turn will benefit creditors, particularly where there are limited opportunities to sell assets such as those which comprise the Miscellaneous Assets. Furthermore, the Debtor's proposed sale of the Miscellaneous Assets is in "good faith" within the meaning of the <u>Abbotts Dairies</u> analysis. The Debtor represents that no insider will gain an unfair advantage from the sale of Miscellaneous Assets pursuant to the Sale Procedures.

18. As previously set forth, the Debtor will provide notice and a reasonable opportunity for creditors and parties in interest to review the adequacy of the price received for any sale of Miscellaneous Assets. In light of the foregoing, the Debtor submits that the Sale Procedures are a sound exercise of the Debtor's business judgment, and are necessary, prudent and in the best interests of the Debtor, its estate and creditors.

19. The Debtor proposes to sell the Miscellaneous Assets in a commercially reasonable manner and expect that the value of the proceeds from such sales will fairly reflect the value of the property sold. To that end, the Debtor likewise seeks approval of its retention of professionals to assist in the marketing of the Miscellaneous Assets.

    **D.**    **<u>Shortened Notice of Sale Procedures.</u>**

20. Bankruptcy Rule 2002(a)(2) generally requires a minimum of twenty-one (21) days' notice of proposed sales of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2). The Bankruptcy Code

defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing.  11 U.S.C. § 102(1)(A); <u>see</u> <u>also</u> <u>Morlan v. Universal Guar. Life Ins. Co.</u>, 298 F.3d 609, 618 (7th Cir. 2002) ("'notice and a hearing' really means notice and the opportunity for a "hearing" and a court may authorize an act without an actual hearing "if such notice is given properly and no interested party requests a hearing").  In interpreting whether notice is appropriate under Bankruptcy Code section 102(1), courts have required notice that is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  <u>In re Lomas Fin. Corp.</u>, 212 B.R. 46, 54 (Bankr. D. Del 1997) (quoting <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)).

21.    Because some of the Miscellaneous Asset sales are of a relatively low value, the usual process of obtaining Court approval of each individual sale would impose unnecessary administrative burdens on the Court, be prohibitively expensive to the Debtor's estate, and in some instances hinder the Debtor's ability to take advantage of sale opportunities that are available only for a limited time (especially considering the unique character of some of the Miscellaneous Assets).  The Debtor believes that the notice and objection procedures contained in the Sale Procedures are justified under the circumstances as the Sale Procedures are designed to maximize the value realized from the sales of the Miscellaneous Assets.

22.    Moreover, the Debtor submits that the Sale Procedures provide all parties in interest with adequate notice and an opportunity for a hearing if so desired.  As noted above, the "notice and a hearing" requirement contained in section 363(b)(1) of the Bankruptcy Code is

8

satisfied even without a hearing where there is an opportunity for a hearing an no party in interest timely requests a hearing. See 11 U.S.C. § 102(1).

### E. The Sale of the Assets Should be Approved Under 11 U.S.C. § 363(f).

23. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject to a *bona fide* dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. See 11 U.S.C. § 363(f).

24. The Debtor expects that the Lender will have no objections to the relief requested herein as this motion is filed in furtherance of the Stipulation between the Debtor and the Lender concerning consensual use of cash collateral. The sale of the Miscellaneous Assets in contemplated in the Stipulation. Notwithstanding the foregoing, the Sale Procedures provide a mechanism for raising objections and therefore to the extent the Lender or a party in interest believes a sale does not comport with section 363(f) of the Bankruptcy Code, they are free to assert such objection. The Debtor proposes that if no timely objection to a Sale Notice is asserted in compliance with the Sale Procedures, then it shall be deemed "consent" to any then proposed sale pursuant to section 363(f)(2) of the Bankruptcy Code.

### F. Waiver of the Stay Period Under Bankruptcy Rule 6004(h)

25. Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property of the estate "is stayed until the expiration of 14 days after entry of an order, unless the court

9

orders otherwise." Fed. R. Bankr. P. 6004(h). The Miscellaneous Assets are unique and sales arise from those limited opportunities where a company is in need for such an asset. Accordingly, the Debtor must seize the limited opportunities to sell the Miscellaneous Assets quickly and therefore submits, in its sound business judgment that a waiver of the stay applicable to the disposition of the Miscellaneous Assets exists.

### G.  The Proposed Brokers.

26. The Debtor submits that it is prudent to retain third party equipment brokers to sell the Miscellaneous Assets. Section 327 of the Bankruptcy Code allows the debtor in possession, with the Court's approval, to employ professional persons that do not hold or represent an interest adverse to the estate, and that are "disinterested persons." 11 U.S.C. § 327(a).

27. Section 328(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession may employ a professional on any reasonable terms and conditions of employment, with the Court's approval. 11 U.S.C. § 328(a).

28. The Debtor proposes to employ two brokers to market certain pieces of the Miscellaneous Assets – Yoder Machinery Sales and 3-D Machinery Inc. (collectively, the "Brokers")

#### (i).  *Yoder Machinery Sales.*

29. Yoder Machinery Sales ("Yoder") is a family held corporation in the business of buying and selling used metal working industrial machinery. Yoder has been in business for more than 50 years and carries a very diverse inventory of equipment, making it a go to source of equipment in both the national and international markets. Yoder currently has more than 6,000 machines in inventory.

30. The Debtor proposes to pay Yoder fifteen percent (15%) of the net sales price for

any Miscellaneous Asset the Debtor places with Yoder and Yoder successfully markets to a closing of a sale. The 15% commission payment shall be paid at the time of the closing on the sale of a Miscellaneous Asset. Yoder is responsible for its own costs.

31.   Yoder has reviewed the Debtor's list of creditors and has represented to the Debtor that it does not represent any interest adverse to the estate. Yoder may have business associations with certain creditors of the Debtor, which is unrelated to this chapter 11 case.

   *(ii)*   *3-D Machinery Inc..*

32.   3-D Machinery Inc. ("3-D") offer a large quantity of metalworking machinery and other equipment but it has one of the world's largest inventories of hydraulic presses. 3-D has likewise been in business for more than 50 years and has both a national and international reach. The Debtor seeks to retain 3-D for the purpose of marketing a large USI/Clearing Hydraulic Press.

33.   The Debtor proposes to pay 3-D fifteen percent (15%) of the net sales price for any Miscellaneous Assets that the Debtor places with 3-D (including the USI/Clearing Hydraulic Press) and 3-D successfully markets to a closing of a sale. 3-D shall be paid its fee/commission at the time of the closing on the sale of the Miscellaneous Asset and 3-D is responsible for its own costs.

34.   3-D has reviewed the Debtor's list of creditors and has represented to the Debtor that it does not represent any interest adverse to the estate. 3-D may have business associations with certain creditors of the Debtor, which is unrelated to this chapter 11 case.

   *(iii)*   *Terms Common to Both Brokers.*

35.   The Brokers will diligently and in good faith market the sale of the Miscellaneous Assets on behalf of the Debtor. The Debtor, in turn, will work cooperatively with the Brokers to

11

prepare the Miscellaneous Assets for market.

36. The Lender shall be permitted to periodically confer with the Brokers regarding their respective marketing efforts and the Brokers shall be required to promptly notify both the Debtor and the Lender of any offers that have been made for the Miscellaneous Assets.

37. The Debtor and the Brokers shall have the right to terminate the engagement with forty-five (45) days prior notice, provided, however, that the Brokers shall still earn the Court-approved fifteen percent (15%) commission on any sale of a Miscellaneous Asset where the buyer of said asset was procured by the Broker prior to the termination date but the sale did not close until after the termination date.

38. Due to the nature of the Brokers' compensation, the Debtor requests that the Brokers be relieved from any requirement to maintain time records.

39. The Brokers seek payment of their fees/commission pursuant to the Sale Procedures, which contemplate payment of fees/commissions at the time of closing on each sale of Miscellaneous Assets. However, the Brokers will be required to obtain final approval of this Court for all fees/commissions in accordance with sections 327 and 328 of the Bankruptcy Code. Pursuant to section 328(a) of the Bankruptcy Code, the Debtor requests by this Motion that the Broker's compensation and fee structure be approved now and final fee applications be granted unless such compensation "proves to have been improvident in light of developments not capable of being anticipated at the time" the fee structure was originally approved. 11 U.S.C. § 328(a).

H. **Basis for Approving the Employment of the Brokers.**

40. The Debtor, in an exercise of its sound business judgment, submits that the employment of the Brokers as proposed in this Motion should be approved. Much of the

Miscellaneous Assets is unique and there is a limited market for these assets that is generally driven by need. The Debtor requires the Brokers' experience, expertise and global reach to properly market the Miscellaneous Assets.

41. To the best of Debtor's knowledge, information and belief, the Brokers neither hold nor represent any interest adverse to the Debtor or its estate in the matters for which it is proposed to be retained. Accordingly, the Debtor believes that the Brokers are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

42. The Debtor submits that the proposed compensation terms and conditions for the Brokers' are reasonable and consistent with industry terms, thereby satisfying the requirements of section 328(a).

WHEREFORE, the Debtor requests that this honorable Court grant the relief sought in this Motion and grant such further relief as the Court deems appropriate.

<u>Dated: August 22 , 2013</u>                    Respectfully submitted by,

**McGUIREWOODS LLP**

<u>By: /s/ Michael J. Roeschenthaler</u>
Michael J. Roeschenthaler
PA I.D. No. 87647
Scott E. Schuster
PA I.D. No. 203766
EQT plaza
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA  15222
Phone:  (412) 667-6000
Fax:  (412) 667-6050
mroeschenthaler@mcguirewoods.com
sschuster@mcguirewoods.com

*Counsel to MSI Corporation*