## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No. 13-22457-JAD |
| MSI CORPORATION, | Chapter 11 |
| Debtor. | Honorable Jeffery A. Deller<br>United States Bankruptcy Judge |
| | **Filed Electronically** |

## DISCLOSURE STATEMENT TO ACCOMPANY
## REORGANIZATION PLAN DATED JULY 18, 2014

MSI Corporation, ("Debtor" or "MSI") furnishes this disclosure statement ("Disclosure Statement") to creditors in the above-captioned matter pursuant to Bankruptcy Code § 1125 to assist them in evaluating the Debtor's proposed Chapter 11 plan ("Plan"), a copy of which is attached hereto and marked as Exhibit A. Creditors may vote for or against the Plan. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the Disclosure Statement. The Court will schedule a hearing on the plan pursuant to 11 U.S.C. § 1129.

Address for return of ballots:

**McGuireWoods LLP**
**Attn:  Michael J. Roeschenthaler**
**625 Liberty Avenue, 23rd Floor**
**Pittsburgh, PA 15222**
**Fax: 412-402-4193**

Each holder of a Claim or Equity Interest of a Class under the Plan will receive this Disclosure Statement, the Plan and a ballot ("Ballot") for accepting or rejecting the Plan. Any holder of a Claim or Equity Interest whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan is considered "Impaired" and therefore eligible to vote. Each holder of a Claim or Equity Interest of a Class that is deemed to accept or reject the Plan will not be eligible to vote on the Plan. You should review this Disclosure Statement and the Plan before submitting a ballot to confirm whether you are entitled to vote. Only eligible votes will be counted for Plan confirmation purposes.

> **Which Classes of Claims are Entitled to Vote on the Plan?**
>
> - Claims in Classes 1, 2 and 6 are Impaired and entitled to vote on the Plan (each a "Voting Class" and together the "Voting Classes")
>
> - Claims in Classes 3, 4 and 5 are Unimpaired, are deemed to have accepted the Plan, and are not entitled to vote on the Plan
>
> - Equity Interests in Class 7 are Unimpaired, are deemed to have accepted the Plan and are not entitled to vote on the Plan.

For a summary description of the Classes of Claims and Equity Interests and their respective treatment under the Plan, see Article I below.

## The Debtor proposes to pay 100% of all Allowed Claims of creditors and claimants in its Plan.

Pursuant to the Bankruptcy Code, the Plan will be deemed accepted by an Impaired Class of Claims if the Plan Proponents receive votes accepting the Plan representing at least:

- two-thirds (2/3) of the total dollar amount of the Allowed Claims in the Class that cast a vote; and

- more than one-half (1/2) of the total number of Allowed Claims in the Class that cast a vote.

All properly completed Ballots *actually received* by the Debtor no later than [_____], **2014 at 5:00 p.m. (EST)** (the "Voting Deadline") will be counted in determining whether each Impaired Class entitled to vote on the Plan has accepted the Plan. All Ballots must be delivered to and received by the Debtor by the Voting Deadline. Any Ballots received after the Voting Deadline will not be counted.

The Ballots have been specifically designed for the purpose of soliciting votes on the Plan from each Class entitled to vote. For this reason, in voting on the Plan, please use only the Ballot sent to you with this Disclosure Statement. If you hold Claims in more than one Class, you must use a separate Ballot for voting with respect to each Class of Claims that you hold. **If you believe you have received the incorrect form of Ballot, you need another Ballot or you have any questions concerning the form of Ballot, please contact the counsel for the Debtor, Michael J. Roeschenthaler, in advance of the Voting Deadline at 412-667-7905 or via email mroeschenthaler@mcguirewoods.com.**

All pleadings and other documents referred to in this Disclosure Statement as being on file with the Bankruptcy Court are available for inspection and review during normal business hours at the Office of the Clerk of the United States Bankruptcy Court for the Western District of Pennsylvania, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219; telephone (412) 644-2700, or on-line at the Bankruptcy Court's website: http://www.pawb.uscourts.gov (PACER-CM/ECF account required for on-line viewing of documents).

## IMPORTANT NOTICE

**This Disclosure Statement[1] and its related documents are the only documents authorized by the Bankruptcy Court to be used in connection with the solicitation of votes to accept the Plan. No representations have been authorized by the Bankruptcy Court concerning the Debtor, its business operations or the value of its assets, except as explicitly set forth in this Disclosure Statement. The Debtor urges you to read this Disclosure Statement carefully for a discussion of voting instructions, recovery information, classifications of claims, the history of the Debtor and the Case, the Debtor's business and properties and a summary and analysis of the Plan.**

**The Debtor reserves the right to file an amended Plan and Disclosure Statement from time to time.**

**The Plan and Disclosure Statement are not required to be prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law. The Disclosure Statement has been approved by the Bankruptcy Court as containing "adequate information;" however, such approval does not constitute an endorsement of the Plan or Disclosure Statement by the Bankruptcy Court.**

**The Disclosure Statement contains only a summary of the Plan. This Disclosure Statement is not intended to replace a careful and detailed review of the Plan, but instead, is an aid and supplement to such review. This Disclosure Statement is qualified in its entirety by reference to the Plan and the agreements and documents described therein. If there is a conflict between this Disclosure Statement and the Plan, the provisions of the Plan will govern. You are encouraged to review the full text of the Plan and to read carefully the entire Disclosure Statement, including all exhibits, before deciding how to vote with respect to the Plan.**

**Except as otherwise indicated, the statements in this Disclosure Statement are made as of July 18, 2014 and the delivery of this Disclosure Statement will not, under any circumstances, imply that the information contained herein is correct at any time after July 18, 2014. Any estimates of Claims in this Disclosure Statement may vary from the final amounts of Claims allowed by the Bankruptcy Court.**

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Plan.

The financial information set forth in this Disclosure Statement has not been audited by independent certified public accountants, nor has it necessarily been prepared in accordance with generally accepted accounting principles, except as specifically set forth herein.  For that reason, and as a result of the complexity of the financial affairs of the Debtor, the Debtor does not represent or warrant that the information set forth in this Disclosure Statement is without any inaccuracy.  To the extent possible, however, the information has been prepared from the Debtor's financial books and records, and every reasonable effort has been made by the Debtor to ensure that all information in this Disclosure Statement has been fairly presented.

YOU SHOULD NOT CONSTRUE THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  YOU SHOULD, THEREFORE, CONSULT WITH YOUR OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS IN CONNECTION WITH THE PLAN, THE SOLICITATION OF VOTES ON THE PLAN AND THE TRANSACTIONS CONTEMPLATED BY THE PLAN.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON BY ANY PERSON OR ENTITY FOR ANY PURPOSE OTHER THAN HOLDERS OF IMPAIRED CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN AND FOR THE PURPOSE OF DETERMINING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.   NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS OR EQUITY INTERESTS.

## ARTICLE I - BACKGROUND

A.    **Background**

    **(i)**    **Name of Debtor**:  MSI Corporation

    **(ii)**    **Type of Debtor**: Corporation

    **(iii)**    **Debtor's Business**: MSI is a specialty metals processor for titanium alloys, zirconium, niobium, nickel and cobalt-based allows, clad metals, copper, common stainless and tool steels.  Among other things, MSI provides primary and finish grinding, heat treating, saw cutting, water-jet cutting, milling, lathe turning, shot/grit blasting, straightening and leveling services and flame cutting and plate shearing.  MSI is located in Vandergrift, Pennsylvania and has been providing quality services for more than 20 years.

-4-

(iv)    **Date of Chapter 11 Petition**: June 7, 2013

(v)    **Events that Caused the Filing**:  MSI's bankruptcy filing resulted from a combination of (a) a downturn in the metals industry, which resulted in a reduction in metals processing and related revenue and (b) conflicts with MSI's primary secured lender attributable to a covenant default under MSI's pre-petition loan agreements.

(vi)    **Anticipated Future of the Company & Source of this Information and Opinion**: MSI will reorganize as an operating entity.  For more than 18 months, MSI has operated from its use of cash from operations and MSI projects an increase in operational revenue (based on an increase in recent demand and a decrease in competition).   While MSI will continue to explore refinancing opportunities, its ability to consummate the Plan is not contingent upon refinancing.  The source of this information is the management of MSI, based on analysis of current and historical financials and published market reports.

(vii)    **Summary of Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan**:

Following are the various Classes of creditors, designation of whether each Class is Impaired and whether each class may vote due to the impairment of their Claims:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | FCB Secured Claims | Impaired | Yes |
| Class 2 | Amada Secured Claims | Impaired | Yes |
| Class 3 | Other Secured Claims | Unimpaired | No |
| Class 4 | Priority Tax Claims | Unimpaired | No |
| Class 5 | Priority Non-Tax Claims | Unimpaired | No |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Equity Interests | Unimpaired | No |

Following is the proposed treatment of administrative expense claimants, each Class of creditor and Equity Interests:

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|-------|----------------------------------|-----------|--------------------|
| N/A | Administrative Expense Claims (other than those set forth separately below) | To the extent any non-Professional Administrative Expense Claims are Allowed or Allowable, the holder of such Claim will be paid in Cash the Allowed amount of such Claim on the Effective Date or as soon thereafter as practicable unless the holder of such Claim agrees with the Debtor to alternative treatment. Allowed post-petition trade Claims will be paid in the ordinary course of business pursuant to normal credit terms where they exist. | 100% |
| N/A | Compensation and Reimbursement Claims | All Professionals or other Persons seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by a date that is no more than ninety (90) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Professionals shall be paid in full by the Debtor in such amounts as are allowed by the Bankruptcy Court either on the Effective Date, or, as agreed upon by each respective Professional, at no interest through equal monthly payments beginning on the Effective Date and continuing for five (5) months thereafter. | 100% |
| N/A | U.S. Trustee Fees | All fees payable in the Case under 28 U.S.C. §1930, as agreed by the Debtor or as determined by the Bankruptcy Court, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Debtor as required under 28 U.S.C. §1930 until such time as an order is entered by the Bankruptcy Court closing the Case. | 100% |

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| 1 | First Commonwealth Bank - Secured Claim – apx. $3,243,888.00 | The Allowed Claims of FCB shall be paid in full either on the Effective Date from the loan proceeds of an Exit Financing Facility or over the Plan Term from revenue from operations and other sources that become available to the Debtor. In the latter scenario, FCB shall receive approximately $25,000 per month for the first six months following the Effective Date. Thereafter and continuing for the next forty-two months, FCB shall receive monthly payments in an amount necessary to fully amortize the loan balance over an eighty-six (86) month period, which the Debtor and FCB estimate to be approximately $45,000. The Debtor will also pay FCB periodic supplemental payment of $25,000 if it reaches a cash threshold of $325,000 on any Friday during the Plan Term. FCB will also receive a percentage of Miscellaneous Income (non-ordinary course income) during the Plan Term. At the end of the four-year period, the Debtor will pay FCB the remaining balance of the FCB Secured Claim. FCB shall retain the Liens as they exist as of the Confirmation Date until the FCB Secured Claim is paid in full in accordance with the Plan. | 100% or as otherwise agreed upon |
| 2 | Amada Machine Tools America, Inc.. Secured Claim – apx. $65,000 - $75,000 | The Allowed Amada Secured Claim shall be paid at no interest over thirty (30) months. Debtor shall make thirty (30) equal monthly payments to Amada beginning on the Effective Date and due each month thereafter for thirty (30) months until such time the Amada Secured Claim is paid in full. Amada shall retain the Amada Lien until the Debtor pays Amada the total amount of the Allowed Amada Secured Claim. | 100% or as otherwise agreed upon |
| 3 | Other Secured Claims – Wells Fargo Equipment Finance, Inc. and any other equipment lender - | Holders of Allowed Other Secured Claims shall be paid in accordance with and pursuant to their respective agreements between themselves and the Debtor. With respect to Wells Fargo Equipment Finance, Inc., the Debtor shall continue to make payments pursuant to the stipulation filed with the Bankruptcy Court on 10/31/13 at Docket No. 136. | 100% or as otherwise agreed upon |

| Class | Type of Claim or Equity Interest | Treatment | Estimated Recovery |
|---|---|---|---|
| | apx. $140,000 | Holders of Allowed Other Secured Claims shall retain their Liens after the Effective Date until such time as the Allowed Other Secured Claim is paid in full or otherwise satisfied. | |
| 4 | Priority Tax Claims (Unsecured) – apx. $611 | The holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date. | 100% or as otherwise agreed upon |
| 5 | Priority Non-Tax Claims (Unsecured) - $11,725 | The holders of Allowed Priority Non-Tax Claims shall be paid in full on the Effective Date, subject to any statutory caps/limitations on such claim(s) set forth in the Bankruptcy Code. | 100% or as otherwise agreed upon |
| 6 | General Unsecured Claims apx.$600,000 | The holders of Allowed General Unsecured Claims shall be paid in full at no interest during the Plan Term. Debtor shall make twenty (20) equal General Unsecured Quarterly Distributions to holders of Allowed General Unsecured Claims, each in the amount of five percent (5%) of each respective Allowed General Unsecured Claim beginning on the fifteenth (15th) day of the month immediately following the expiration of the Quarter in which the Effective Date occurs and continuing on the fifteenth (15th) day of the month immediately following the expiration of each Quarter thereafter until the Allowed General Unsecured Claims are paid in full. To illustrate, if the Effective Date occurs on October 1, 2014, the first General Unsecured Quarterly Payment shall be due on January 15, 2015. | 100% |
| 7 | Equity Interests | All Equity Interests issued by the Debtor shall constitute Equity Interests in the Reorganized Debtor in the same class and percentage as existed prior to the Petition Date. | 100% |

**(viii)  Are All Monthly Operating Statements Current and on File with the Clerk of Court and is the Debtor in Compliance with Other Applicable Rules and Deadlines Set by the United States Trustee?**

Yes  _X___     No _____

On August 27, 2013, the United States Trustee conducted a meeting of creditors pursuant to section 341 of the Bankruptcy Code.  An authorized representative of the Debtor attended the meeting.  Additionally, the Debtor has filed all monthly operating reports and timely paid all statutory quarterly fees as required by the Office of the United States Trustee.  To the best of the Debtor's knowledge, and upon information and belief, the Debtor has complied with all other applicable requirements of the Bankruptcy Code and Bankruptcy Rules, as well as any local rules of the Bankruptcy Court and deadlines of the United States Trustee.

**(ix)**    **Does the Plan provided for releases of non-debtor parties?**  The Plan does not provide for releases of non-debtor parties.

**(x)**    **Identify all executory contracts and unexpired leases that are to be assumed in connection with the Plan.**  See attached <u>Exhibit B</u>.  On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected, except for an executory contract or unexpired lease that (a) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court prior to the Effective Date; (b) is subject to separate motion to assume or reject (or terminate or modify, as the case may be) filed under sections 365 of the Bankruptcy Code prior to the Effective Date; or (c) is expressly assumed in the Plan, including, without limitation, those executory contracts or unexpired leases that are listed on Exhibit A to the Plan and Exhibit B to this Disclosure Statement.  Article VIII of the Plan sets forth in greater detail the proposed treatment of executory contracts and unexpired leases.

**(xi)**    **Has a bar date been set for creditors to file proofs of claims on account of pre-petition debts?**

Yes <u> X </u>     No _____

The Bankruptcy Court established November 13, 2013 as the final date for filing proofs of claims.  The final date for governmental agencies to file proofs of claims was set for December 4, 2013.

**(xii)**    **Has an election under 11 U.S.C. §1121(e) been filed with the Court to be treated as a small business?**

Yes _____     No <u> X </u>

**(xiii)**    **Specify property that will be transferred subject to 11 U.S.C. §1146(c).**
None

## ARTICLE II – LIABILITIES AND ASSETS OF THE DEBTOR

**A.     Creditors and Equity Interests**.  Following is a description of the creditors and Equity Interest holders of MSI.  In some instances, amounts are estimated due to, among other things: the Claim being disputed, the Claim being contingent or unliquidated, uncertainty of the nature and extent of the Claim, or the fact that there have been post-petition adjustments (such as payments or the accrual of interest).  The estimates set forth in this Disclosure Statement are merely estimates and not an admission or stipulation of the nature and extent of a Claim.  The Debtor does not warrant the accuracy of estimates.  Moreover, Claims that are disputed, contingent or unliquidated or subject to an objection may ultimately not be Allowed and therefore any such creditor may not receive a distribution on account of such Claim.

**(i)     The following chart identifies Secured Claims of the Debtor**:

| Creditor | Total Amount Owed | Type of Collateral Priority of Lien (1, 2, 3) | Disputed (D) Liquidated (L) Unliquidated (U) | Will Liens Be Retained Under the Plan? (Y) or (N) |
|---|---|---|---|---|
| First Commonwealth Bank | Est. $3,240,000 | First on substantially all assets. | L | Y |
| Amada Machine Tools Inc. | Est. $65,000 | Second on substantially all assets. | L | Y |
| Wells Fargo Equipment Finance, Inc. | Est. $100,000 | First on Amada PCSA W530X Pulse Cutting Metal Band Saw Machine with Return Conveyor, External Chip Conveyor and All Standard Equipment (serial number 53020010) | L | Y |
| **TOTAL** | **Est. $3,405,000** | | | |

(ii)    **The following chart identifies Priority Tax Claims and Priority Non-Tax Claims of the Debtor.**

| Creditor | Total Amount Owed | Type of Collateral | Disputed (D) Liquidated (L) Unliquidated (U) |
|---|---|---|---|
| Commonwealth of Pennsylvania | $611.00 | None | (L) |
| Henry McLaughlin | $11,725.00 | None | (L) |
| **TOTAL** | **$12,336.00** | | |

(iii)    **A summary of General Unsecured Claim information follows.**    The Debtor filed its bankruptcy schedules with the Bankruptcy Court on July 16, 2013 at Docket No. 64.  The bankruptcy schedules were amended three times (October 23, 2013 – Docket No. 128, May 22, 2014 - Docket No. 209 and on June 12, 2014 – Docket No. 224).

| | | |
|---|---|---|
| (a) | Amount Debtor Scheduled (Disputed and Undisputed) | $ 598,995.91 |
| (b) | Amount of Unscheduled Unsecured Claims[2] | $ 156,353.89 |
| (c) | Total Claims Scheduled or Filed | $ 755,349.80 |
| (d) | Amount Debtor Disputes | To Be Determined |
| (e) | Estimated Allowable Unsecured Claims | To Be Determined |

(iv)    **Equity Interests.**  As identified in the Debtor's statement of financial affairs, which was filed with the Bankruptcy Court on July 16, 2013 at Docket No. 64, Henry W. McLaughlin, III owns 50% of the stock in MSI and Gisela McLaughlin owns 50% of the stock in MSI.  Both will maintain their respective ownership interests in the Reorganized Debtor on the Effective Date.

**B.    Assets of the Debtor**. The Debtor's assets are primarily comprised of: 27.65 acres of real property located at 210 First Street, Vandergrift, Pennsylvania 15690 that are zoned industrial, multiple buildings situated on the real property, machinery and equipment, work vehicles, accounts receivable incurred in the ordinary course of business and cash derived from operations. The Debtor estimates that the fair market value of its assets as a going concern to be approximately $12 million.[3]   The Debtor estimates that the liquidation value of its assets is

---

[2] Includes (1) unsecured Claims filed by unscheduled creditors; (2) that portion of any unsecured Claim filed by a scheduled creditor that exceeds the amount debtor scheduled; and (3) any unsecured portion of any secured debt not previously scheduled.

[3] This amount does not reflect replacement value or liquidation value.

approximately $5,401,559[4] before taking into account liquidation costs, which are described in greater detail in the liquidation analysis set forth on <u>Exhibit C</u>. There is approximately $3,375,686 in Secured Claims encumbering the Debtor's assets.[5] The equity in the Debtor's assets is approximately $2,025,873.

## ARTICLE III – SUMMARY OF THE PLAN

**A.    Summary**.  If the Plan is confirmed, the Debtor will emerge from chapter 11 as a Reorganized Debtor and will continue to operate.  Revenues from operations and any miscellaneous income that the Debtor might receive over the course of the Plan Term will be used to fund the proposed Plan payments.  The Debtor will pay Allowed Claims over a five (5) year period, although the proposed treatment of Allowed Claims varies based on priority and the applicable provisions of the Bankruptcy Code.  The Plan provides for payment of 100% of the amounts owed on account of Allowed Claims.

The Plan generally provides that:

(i)     FCB's Allowed Secured Claim will be paid in full within four (4) years of the Effective Date.

(ii)    Amada's Allowed Secured Claim will be paid in full within thirty (30) months of the Effective Date.

(iii)   Allowed Other Secured Claims, including that of Wells Fargo Equipment Finance, Inc., will be paid in full pursuant to the respective agreements between each creditor and the Debtor.

(iv)    Allowed Priority Tax Claims will be paid in full on the Effective Date.

(v)     Allowed Priority Non-tax Claims will be paid in full on the Effective Date.

(vi)    Allowed General Unsecured Claims will be paid in full within five (5) years of the Effective Date.  Allowed General Unsecured Claims will receive twenty (20) quarterly payments over the Plan Term commencing on the fifteenth (15th) day of the month immediately following the expiration of the Quarter in which the Effective Date occurs.

(vii)   Allowed Administrative Expense Claims will be paid in full.  Post-petition trade claimants will be paid pursuant to ordinary business terms by and between each

---

[4] This amount does not reflect replacement value or going concern value.
[5] This amount includes apx. $100,000 for FCB Legal Fees, which are to be paid pursuant to the FCB Loan Agreements.  This amount also does not include the apx. $100,000 claim of Wells Fargo as the liquidation analysis contemplates Wells Fargo's collateral would be turned over in lieu of its claim.

respective trade claimant and the Debtor. The Allowed Administrative Expense Claims of Professionals will be paid as soon as practicable following the Effective Date but no later than the last day of the fifth (5th) month following the Effective Date, unless otherwise agreed upon by a Professional.

**(viii)** The holders of Equity Interests will maintain their respective interests in the Reorganized Debtor.

**(ix)** All fees payable in the Case under 28 U.S.C. § 1930 will, if not previously paid, be paid in full in Cash on the Effective Date and will continue to be paid by the Debtor as required under 28 U.S.C. § 1930 until such time as an order is entered by the Bankruptcy Court closing the Case.

**(x)** The Plan will go effective on the Effective Date, which is defined in the Plan as a "Business Day on or after the Confirmation Date specified by the Debtor on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 9.2 [of the Plan] have been satisfied or waived."

**B.**    **Will cramdown be sought?**   Section 1129(a) of the Bankruptcy Code provides for a Plan to be consensually confirmed if each Impaired Class votes in favor of the Plan. In this Case, Classes 1, 2 and 6 are designated as Impaired Classes entitled to vote. All other Classes are designated as being unimpaired for voting purposes and are deemed to have voted in favor of the Plan. The Debtor proposes to pay 100% of the Allowed Claims of creditors and claimants. If any of the Impaired Classes vote against confirmation of the Plan, the Debtor will seek to confirm the Plan under section 1129(b) of the Bankruptcy Code (the cramdown provision) on a non-consensual basis by showing (a) the Plan does not unfairly discriminate and (b) is fair and adequate.

**C.**    **Best Interest of Creditors Test.**   Section 1129(7)(A) of the Bankruptcy Code requires that each holder of an Impaired Claim or Equity Interest either (i) accept the Plan, or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. This provision is often referred to as the "best interest of creditors test." The first step in determining whether this test has been satisfied in this Case is to determine the gross dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case. The next step is to reduce the gross amount of sale proceeds by the costs and expenses of liquidation (e.g., auctioneer's fees, occupancy costs, other direct liquidation costs, etc.). After taking into account the costs and expenses of liquidation, it is necessary to reduce the proceeds available for creditors and claimants by additional administrative and priority Claims that would arise from the use of chapter 7 for the purposes of liquidation (e.g., chapter 7 trustee fees, counsel for chapter 7 trustee, etc.). Any remaining net cash then would be allocated to the Claims of creditors and claimants in accordance with the priority provisions of the Bankruptcy Code (section 726 of the Bankruptcy Code). As set forth

in greater detail in the Liquidation Analysis attached hereto as <u>Exhibit C</u>, the Debtor submits that the Plan satisfies the best interest of creditors test.  The following summarizes Exhibit C:

| | |
|---|---|
| Total value of Debtor's Assets: | $5,401,559 |
| | |
| LESS Liquidation costs | $1,215,118 |
| LESS Secured Claims (including FCB Legal Fees ) | $3,375,686 |
| LESS Chapter 11 Administrative Claims (Professional) | $  400,000 |
| LESS Chapter 11 Administrative Claims (Trade) | $  143,240 |
| LESS Miscellaneous Administrative Claims | $    25,000 |
| LESS Priority Unsecured Claims | $    12,336 |
| | |
| TOTAL AMT. AVAILABLE FOR UNSECURED CREDITORS: | $  230,179 |
| | |
| Percentage of Dividend to Unsecured Creditors in Chapter 7: | 38% |

***The Debtor submits that the proposed <u>100%</u> dividend in chapter 11 is greater than the projected dividend unsecured creditors would receive in a chapter 7 liquidation (38%).***

**D.**     **<u>Feasibility</u>**.  Section 1129(a)(11) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed only if the Court finds that such plan is feasible.  A feasible plan is one which will not lead to a need for further reorganization or liquidation of the debtor.  The Debtor submits that the Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code.  Attached for your review are the following:

**(i)** Income Statement for prior 12 months as <u>Exhibit D</u>
**(ii)** Cash Flow Statement for prior 12 months as <u>Exhibit E</u>
**(iii)** Cash Flow Projections for Plan Term as <u>Exhibit F</u>

As demonstrated from the attached financial statements, the Debtor has operated solely from cash generated from operations for the past year.  The Debtor has also maintained a positive cash flow during the Case.  The Cash Flow Projections for the Plan Term further demonstrates that the Debtor's Plan is feasible.

***Preserved Litigation May Yield Additional Funds for Distribution***.  In section 10.5 of the Plan, certain Causes of Action are identified as being preserved by the Debtor, including, without limitation, active and potential Causes of Action arising from or relating to the Norfolk Incident.  Recoveries from Causes of Action may be used for Plan distributions but the feasibility of the Plan is not contingent upon the Debtor's success in recovering funds from any Causes of Action.

-14-

*For more information about Causes of Action preserved under the Plan (including those unrelated to the Norfolk Incident), please review section 10.5 of the attached Plan.*

**E.     Condition Precedent to Confirmation of Plan.**   The following are conditions precedent to the confirmation of the Plan:

**(i)**     The Debtor and FCB shall satisfy the requirements set forth in Section 4.1(b)(x) relating to new loan documentation.

**(ii)**     The Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement; and

**(iii)**     The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtor.

**F.     Conditions Precedent to Effective Date**.   The following are conditions precedent to the Effective Date of the Plan:

**(i)**     No stay of the Confirmation Order shall then be in effect; and

**(ii)**     If applicable, the Exit Financing Agreement has been executed by all parties thereto and the Exit Financing Facility has been approved by the Court.

**G.     Satisfaction of Conditions to Effective Date**.   If the Debtor determines that one of the conditions precedent set forth in Section 9.2 of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Plan going effective with the Bankruptcy Court.

**H.     Other Significant Features of the Plan**.

**(i)     Tax Consequences**.

**(a)     *Introduction***.   The following discussion summarizes certain material United States federal income tax ("Federal Income Tax") consequences of the Plan to certain holders of Allowed Claims and the Debtor.   This discussion does not address the Federal Income Tax consequences to Creditors whose claims are entitled to payment in full in cash, or are otherwise unimpaired under the Plan as the Debtor does not believe the Federal Income Tax consequences of the Plan to such creditors meet the materiality threshold for disclosure as set forth in section 1125 of the Bankruptcy Code.

This discussion is based upon existing provisions of the Internal Revenue Code of 1986 (the "Tax Code"), Treasury regulations promulgated thereunder, judicial authorities and current administrative rulings and practices now in effect.   No assurance can be given that future legislation, regulations, administrative pronouncements and/or judicial decisions will not change applicable law and affect the analysis described herein.   Any such change could be applied retroactively in a manner that would adversely affect the creditors and the Debtor.

The Federal Income Tax consequences of certain aspects of the Plan are uncertain due to the lack of applicable legal authority and may be subject to administrative or judicial interpretations that differ from the discussion below.  The Debtor and its Professionals have not sought and will not seek any rulings from the Internal Revenue Service ("IRS") with respect to the Federal Income Tax consequences discussed below.  Although the discussion below represents the best judgment as to the matters discussed herein, it does not in any way bind the IRS or the courts or in any way constitute an assurance that the Federal Income Tax consequences discussed herein will be accepted by the IRS or the courts.

The following discussion does not address state, local or foreign tax considerations that may be applicable to the Debtor or Creditors and the discussion does not address the tax consequences of the Plan to certain types of Creditors (including foreign persons, financial institutions, insurance companies, tax-exempt organizations and taxpayers who may be subject to the alternative minimum tax) who may be subject to special rules not addressed herein.

THE FOLLOWING SUMMARY OF CERTAIN MATERIAL FEDERAL INCOME TAX CONSEQUENCES IS FOR GENERAL INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST.  THE DEBTOR AND ITS PROFESSIONALS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN WITH RESPECT TO THE DEBTOR OR THE HOLDERS OF ANY CLAIMS OR EQUITY INTERESTS, NOR ARE THE PLAN PROPONENTS RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES.  ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE ADVISED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN IN GENERAL AND IN PARTICULAR, THE TIMING, CHARACTER AND AMOUNTS OF INCOME, GAIN, LOSS, DEDUCTION, CREDIT OR CREDIT RECAPTURE TO BE RECOGNIZED, AND ANY PROCEDURAL REQUIREMENTS WITH WHICH THE HOLDER MUST COMPLY.

**(b)**    ***Certain General United States Federal Income Tax Consequences to Holders of Claims.***  The tax treatment of holders of Claims and the character and amount of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan will depend upon, among other things, (i) whether the Claim (or any portion thereof) constitutes a Claim for principal or interest; (ii) the type and classification of consideration received by the holder in

-16-

exchange for the Claim; (iii) whether the holder is a resident of the United States for tax purposes (or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above); (iv) the manner in which a holder acquired a Claim; (v) the length of time the Claim has been held; (vi) whether the claim was acquired at a discount; (vii) whether the holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (viii) whether the holder has previously included accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the holder; (x) whether the claim is an installment obligation for United States federal income tax purposes; and (xi) whether the "market discount" rules are applicable to the holder.  Therefore, holders of Claims should consult their tax advisors for information that may be relevant to their particular situation and circumstances and the particular tax consequences to them of the transactions contemplated by the Plan.

A holder of a Claim should generally recognize a gain (or loss) to the extent that the amount realized under the Plan in respect of the Claim exceeds (or is exceeded by) the holder's tax basis in the Claim.  The holder's amount realized for this purpose will generally equal the amount of Cash the holder receives under the Plan in respect of its Claim.  The timing and amount of income, gain or loss recognized as a consequence provided for by the Plan will depend on, among other things, whether the holder of a Claim receives multiple distributions pursuant to the Plan and whether the Debtor's obligation to make such payments is treated as a new debt for United States federal income tax purposes.  Gain or loss may not currently be recognized if the property received does not have an ascertainable fair market value.

**(c)     *Accrued But Untaxed Interest*.**  A portion of the consideration (whether cash, stock, debt or other consideration) received by Holders of Claims and Interest may be attributable to accrued but untaxed interest on such Claims.  Such amount should be taxable to that holder as interest income if such accrued interest has not been previously included in the holder's gross income for U.S. federal income tax purposes.  Conversely, a holder generally recognizes a deductible loss to the extent any accrues interest claimed was previously included in income and is not paid in full.

If the fair value of the consideration received by holders of Claims and Interests is not sufficient to fully satisfy all principal and interest on Allowed Claims, the extent to which such consideration will be attributable to accrued but untaxed interest is unclear.  Holders of Claims and Interest should consult their tax advisors regarding the proper allocation of the consideration received by them under the Plan.

**(d)     *Information Reporting and Backup Withholding*.**  Certain payments, including the payments with respect to Claims pursuant to the Plan, are generally

subject to information reporting by the payor (the Debtor) to the IRS. Moreover, such reportable payments are subject to backup withholding under certain circumstances. Under the Tax Code's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the holder: (1) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact, or (2) provides a correct United States taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Holders of Claims that are non-United States Persons and that receive payments or distributions under the Plan will not be subject to backup withholding, provided that such holders furnish certification of their status as non-United States Persons (and furnish any other required certification), or are otherwise exempt from backup withholding. Generally, such certification is provided on IRS Form W-8BEN. Backup withholding is not an additional tax. Amounts withheld under the backup withholding rules may be credited against a holder's United States federal income tax liability and a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS (generally, a United States federal income tax return).

PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. THE DEBTOR MAKES THE ABOVE-NOTED DISCLOSURE OF POSSIBLE TAX CONSEQUENCES FOR THE SOLE PURPOSE OF ALERTING READERS TO TAX ISSUES THEY MAY WISH TO CONSIDER.

**(ii)** **Distributions.** Distributions will be made in accordance with the Plan. The timing of distributions is set forth above in Article I(A)(vii) of the Disclosure Statement.

**(iii)** **Disputed Claims.**

**(a)** ***Objections to Claims.*** The Debtor or the Reorganized Debtor, as the case may be, shall be entitled to object to any Claim provided that such Claims have not already been Allowed by an order of the Court.

**(b)** ***No Distribution Pending Allowance.*** Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**(c)** ***Distributions Upon Allowance of Disputed Claims.*** The holder of a Disputed Claim that becomes an Allowed Claim shall receive a distribution(s) in

-18-

Cash as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim as of the Effective Date. No holder of a Disputed Claim shall have any Claim against the Debtor for a distribution with respect to such Claim until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim unless otherwise agreed by the Debtor and the holder of such Disputed Claim or determined by the Bankruptcy Court pursuant to a Final Order. Notwithstanding the foregoing, if a Disputed Claim that arose from litigation pending prior to the Petition Date becomes an Allowed Claim pursuant to a Final Order, distributions on account of such Claim may be made at the conclusion of the Plan Term in the sole discretion of the Debtor notwithstanding any other provision in the Plan.

**(d)** ***Resolution of Disputed Claims***. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, shall have the exclusive right to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than forty five (45) days after the Effective Date (subject, however, to the right of the Debtor to seek an extension of time to file such objections by seeking approval of the Bankruptcy Court).

**(e)** ***Estimation***. The Debtor or the Reorganized Debtor, as the case may be, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for purposes of reserving for such Claim (if the Debtor desires to create such a reserve). If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**(f)** ***Disallowance of Certain Disputed Claims***. Any claim that is "Disputed," as defined in Section 1.27(a)(iv) of the Plan, shall be deemed Disallowed and shall receive no distribution from the Debtor.

## <u>ARTICLE IV - ALTERNATIVES TO THE PLAN</u>

**A.**      **<u>Other Chapter 11 Plans.</u>**  If the Plan is not confirmed, the Debtor or any other party in interest (if the Debtor's exclusive period in which to file a chapter 11 plan has expired) could attempt to formulate an alternative chapter 11 plan that might provide for the disposition of the Debtor's assets other than as provided in the Plan.  However, the Debtor submits that any alternative chapter 11 plan will not likely provide a greater return to creditors than the Plan and will result in further delay in distributions.

**B.**      **<u>Liquidation under Chapter 7 of the Bankruptcy Code.</u>**  If the Plan or any alternative chapter 11 plan cannot be confirmed under section 1129(a) of the Bankruptcy Code, the Case may be converted to a case under chapter 7 of the Bankruptcy Code, in which event a trustee would be appointed (or subsequently elected) to liquidate any remaining assets of the Debtor for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code.  If a trustee is appointed and the assets of the Debtor are liquidated under chapter 7 of the Bankruptcy Code, creditors would likely receive distributions of a lesser value on account of their Allowed Claims as described in the Liquidation Analysis attached as Exhibit C

## <u>ARTICLE V – RISKS</u>

**A**      **<u>Risks Associated With the Plan.</u>**      CREDITORS OF THE DEBTOR ARE ENCOURAGED TO READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.  THOSE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

   **(i)**      **<u>Parties in Interest May Object to the Debtor's Classification of Claims</u>**. Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  The Debtor submits that the classification of claims and interests under the Plan complies with the requirements set forth in the Bankruptcy Code.  However, the Debtor cannot give assurances that the Bankruptcy Court will reach the same conclusion.

   **(ii)**      **<u>The Debtor May Not Be Able to Secure Confirmation of the Plan.</u>** The Debtor cannot assure you that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, the Debtor cannot assure you that the Bankruptcy Court will confirm the Plan.

   **(iii)**      **<u>The Debtor May Object to the Amount or Classification of Your Claim</u>**. The Debtor reserves the right to object to the amount or classification of any claim.  The estimates set forth in this Disclosure Statement cannot be relied on by any creditor whose Claim is subject to an objection.  Any such creditor may not

-20-

receive its expected share of the estimated distributions described in this Disclosure Statement.

(iv)   **Business Conditions May Change.**  As in any business, facts and circumstances could change that could impair the Debtor's ability to perform under the Plan. The metals industry is cyclical.  A downturn in the Debtor's industry could result in a corresponding decline in the Debtor's financial performance.   Customer relationships can also change during the course of business.  If the Debtor were to lose one or more significant customers, it could impair the Debtor's ability to implement the Plan.

## ARTICLE VI - CERTIFICATION

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.  Attached as Exhibit G is the corporate resolution authorizing the filing of the Disclosure Statement and Plan.

_____        7 · 17  14
Signature of Debtor                                   Date
or Authorized Representative

_____        7- 17-14
Signature of Debtor                                   Date
or Authorized Representative

_____        7 - 1 7 -14
Debtor's Counsel                                        Date